

**UNITED  STATES  DISTRICT  COURT**

**FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA**

| | |
|---|---|
| MICHAEL ANTHONY LUMBARD,　　) | CASE NO. SACV 09-0107 DOC (VBx) |
| 　　　　　）<br>　　　　Plaintiff(s),　　） | |
| 　　　　　　） | O R D E R DENYING MOTION FOR |
| 　　v.　　　　） | SUMMARY JUDGMENT |
| 　　　　　　） | |
| DEPARTMENT OF HOMELAND　） | |
| SECURITY, et al.,　　　） | |
| 　　　　　） | |
| 　　　　Defendant(s).　） | |

_____

Before the Court is Defendants Department of Homeland Security (DHS),

Department of Justice (DOJ), and U.S. Citizenship and Immigration Services (USCIS)

(collectively "Defendants") Motion for Summary Judgment (the "Motion").  After considering

the moving, opposing, and replying papers, [as well as the parties' oral argument,] the Court

[DENIES] the Motion.

**I.    Background**

Plaintiff Michael Anthony Lumbard ("Lumbard" or "Plaintiff") filed the instant

lawsuit on February 9, 2009 seeking a declaration of citizenship under 8 U.S.C. § 1401(f), under

which an individual "of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States is presumed to be a national and citizen of the United States at birth. Plaintiff initially applied for citizenship pursuant to section 1401(f) in 2004 and USCIS denied his request. *See* Compl. ¶¶ 8, 11. Plaintiff thereafter appealed USCIS's denial with the USCIS Administrative Office ("AAO"), where he was again denied relief. *Id.* ¶¶ 12-13. Plaintiff alleges that USCIS's denial of his application was arbitrary and not in accordance with the law, *id.* ¶ 14, and on that basis seeks a judicial declaration that he is a citizen of the United States. *Id.* ¶ 16.

Plaintiff alleges that he "believes that he was born in the United States on December 3, 1956, and that he is a U.S. Citizen." First Amended Complaint (FAC) ¶ 14.[1] In 1959, when Plaintiff was approximately three years old, a man named William Lumbard brought Plaintiff home to his wife, a woman by the name of Bessie May Williams. UF 28-29. At her deposition, Ms. Williams recalled that Lumbard provided the following explanation for having brought home a 3 year old boy in disheveled condition: "[we want to] take care of him for the weekend." *See* Williams Depo. Tr. at 28. To which Ms. Williams simply responded "okay." *Id.* Theirs was not a contentious home. (Mr. Lumbard was self-employed in the field of construction and Ms. Williams was a dress shop manager.)

Plaintiff stayed the weekend with Lumbard and Williams. *Id.* On the Sunday of that weekend, Lumbard left to drop Plaintiff off at Plaintiff's home. Williams believed – on the purported basis of her husband's statements – that Plaintiff lived with his grandmother, who was

---

[1]    As a result of Plaintiff's young age at the time of the events relevant to this lawsuit, as well as other obscurities in the record, the parties have struggled to piece together a factual account. With the exception of the documents submitted by Plaintiff, Defendants do not credit Plaintiff's testimonial evidence, including accounts by Plaintiff's family members and the woman who raised Plaintiff from a young age. Plaintiff himself lacks memories from his young age and relies upon accounts supplied by family members and the woman who raised him. The Court proceeds by detailing the evidence in the record, including deposition testimony and physical exhibits.

too sick to care for the boy on the weekends. *Id.* Williams recalls her husband telling her that the boy's mother was drug addicted, which she claims was "not out of the ordinary" for that era. Williams deduced that Plaintiff's home "was not far" from her home in Chicago, since her husband was not gone for long when driving Plaintiff back to Plaintiff's home. *Id.*

A pattern emerged for a few weekends: Lumbard would pick up young Plaintiff from an unknown location on Friday and return Plaintiff to an unknown location on Sunday. Plaintiff would arrive in an unkempt condition and Williams would bathe him and present him with new clothes. Williams never asked her husband where the child lived, never accompanied her husband (or asked to accompany her husband), and never solicited further information about how her husband had come to know the boy. Williams simply cared for the child.

After a few weekends, Lumbard asked his wife if they could keep the boy. She consented, as she claims to have grown quite fond of Plaintiff over the course of his several weekend visits. Plaintiff lived with the family. Then, Lumbard returned home with a boy he claimed was Plaintiff's older brother. Williams, Lumbard, and the two boys took a vacation to Wisconsin; over the course of the vacation Williams informed her husband of her unwilligness to accept Plaintiff's older brother into her home. Mr. Lumbard returned Plaintiff's purported brother to his home and Williams never saw the older brother again. Plaintiff lived with Lumbard and Williams for the remainder of his childhood. On only one occasion, Lumbard took Plaintiff to Canada and explained to his wife that the purpose of the trip was so that Plaintiff could "get his footprints." *See* UF 83. The purpose of the footprints remains unclear from the factual record. Mr. Lumbard died in 1976 without ever explaining to Williams the circumstances surrounding his discovery of Plaintiff.

Lumbard and Williams enrolled Plaintiff in St. Joseph's school, a military boarding school. He was later transferred to another school in Chicago, named St. Francis. The school records from St. Joseph and St. Francis indicate that Plaintiff's place of birth as Canada. *See* Ex. R to Mot. However, Plaintiff has a baptismal certificate that identifies his place of birth as Chicago. UF 40. The Archidocese of Chicago's baptismal log nonetheless lacks a record for Plaintiff's place of birth. UF 52; *see* Ex. L to Mot. (noting that the "record does not indicate Mr.

3

Lumbard's place of birth, although such information is to be entered.")

Plaintiff contacted the Deputy Registrar General of the Province of Ontario, Canada to locate a birth certificate.  By a May 2, 1986 letter, the Deputy Registrar General informed Plaintiff that: "we have searched the province of Ontario Index for the period 1954-1958 and there is no record of a registration for the name(s) indicated in the period covered." *See* Ex. K to Mot.  In 1985, Plaintiff applied for the entry of a delayed record of birth by the Illinois Department of Public Health, and his request was denied because "[i]n order to do this you have to proove [sic] your birth facts two times.  One time by an affidavit and one time by a public document."  Ex. P to Mot.

Plaintiff filed an N-600 Application for Citizenship with USCIS on November 15, 2005 seeking a declaration of citienship pursuant to the "foundling statute" 8 U.S.C. § 1401(f). *See* UF 1-2.  Plaintiff previously filed an N-600 in 2004.  UF 3.  On March 22, 2005, USCIS requested proof of Plaintiffs' residency in Chicago under the age of five.  UF 5.  On July 14, 2005, Plaintiff responded to the March 22, 2005 request for evidence by providing USCIS with a document from the Bureau of the Census, which indicated that the Bureau was unable to find the names of Plaintiff or the adults he claimed took him in.  UF 7.  On November 1, 2006, USCIS denied Plaintiff's N-600 Application.  UF 8.

Reviewing USCIS's denial of Plaintiff's application on appeal, the AAO concluded that Plaintiff failed to satisfy his burden to establish his citizenship by a preponderance of the evidence.  UF 10; *see also* Ex. D to Motion at 3 (finding that "applicant has failed to establish by a preponderance of the evidence, the circumstances of his birth or his discovery and presence in United States.").  The AEO applied the following standard to determine whether Plaintiff had established citizenship under section 1401(f): "the burden of proof shall be on the claimant to establish his or her claimed citizenship by a preponderance of the evidence."  UF 17.  Upon consideration of the evidence in the record – which included a declaration from the woman who raised Plaintiff from a young age (hereinafter his "mother"), letters from Plaintiff's extended family, photographs, a copy of Plaintiff's California Driver's License, a copy of Plaintiff's social security card, a baptismal certificate, and other letters

4

regarding efforts to obtain birth or census records, and school records – the AEO found that the "record contains no evidence to establish the basis on which the applicant's date of birth and parental information was recorded on his baptismal certificate and school and medical records." UF 23.

### II.  Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49.  Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  There must be specific, admissible evidence identifying the basis for the dispute.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]."  *Anderson*, 477 U.S. at 252.

**III.    Discussion**

As noted in the Court's Order denying Defendants' Motion to Dismiss, the findings of the AAO have no effect upon the Court's disposition of Plaintiff's action.  Instead, this action requires a trial de novo.  *See Liacakos v. Kennedy*, 195 F. Supp. 630 (D.D.C. 1961) (holding that "[a] ruling of an administrative official denying citizenship has no prima facie effect or any other effect except to serve as a basis for establishing a justiciable controversy . . . [i]n [a declaratory] action the burden of proof is on the plaintiff.").

Plaintiff seeks a declaration of citizenship pursuant to 8 U.S.C. § 1401(f), which provides in relevant part that the following category of individuals are nationals and citizens of the United States

> [A] person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States

8 U.S.C. § 1401(f).

In *Johnson v. Attorney Gen. of U.S.*, Nos. 04-1575, 053579, 05-4569, 2007 WL 1451755 (3d Cir. May 17, 2007), the Third Circuit required that an individual seeking a declaration of citizenship under section 1401(f) bear the burden of proving that he/she was a person of unknown parentage found in the United States under the age of five, even though "he/she does not have first-hand knowledge of this information."  *Id.* at *39-40 (noting that burden of proof properly rested with petitioner, who had nevertheless stipulated to bear the burden of proof).

Defendants argue that no genuine issue of material fact exists as to Plaintiff's failure to satisfy this initial burden of showing that he is a person of unknown parentage found in the United States while under the age of five.  The Court disagrees.

**A.    Unknown Parentage**

First, Plaintiff has created at least a genuine issue of material fact – if not proved by a preponderance of the evidence – that he is an individual of unknown parentage.  Ms. Williams does not know the identity of Plaintiff's birth parents.  Nor does Plaintiff.  While Ms.

6

Williams insinuates that her husband knew the identity of Plaintiff's birth mother, Mr. Lumbard is no longer alive.

In response, Defendants point to three pieces of evidence in the record: (1) Plaintiff's deposition testimony that he has a "vague early memory of a couple (not Bess or Bill) buttoning my coat before placing me on a trait." *See* Ex. N to Mot; (2) Ms. Williams' testimony that Lumbard informed her that Plaintiff's mother was drug addicted and that Plaintiff resided with his grandmother; and (3) Ms. Williams' recollection of an individual claimed to be Plaintiff's older brother. In sum, the evidence proves the rather unremarkable proposition that Plaintiff has birth parents.

However, section 1401(f) does not create a presumption of citizenship for individuals of "*no* parentage"; the statute creates a presumption of citizenship for individuals of "*unknown* parentage." The distinction is material because the identity of the child's parent(s) is crucial to rebutting the presumption that a child found in the United States was likewise born in the United States. Whether or not Mr. Lumbard knew the identity of Plaintiff's parents – itself an issue of material fact – Plaintiff's parents' identities remain unknown as a matter of record.

For the foregoing reasons, the Court finds a genuine issue of material fact as to whether Plaintiff has established by a preponderance of the evidence that he is a person of unknown parentage.

**B.     Found in the United States under the Age of 5**

Defendants next argue that "Plaintiff also has not established that he was 'found' in the United States under the age of five or how he was 'found' at all." Mot. at 16-17.

As an initial matter, Defendants read into the statute a requirement that Plaintiff establish "how" he was found. No such requirement exists; nor should one exist. The circumstances of Plaintiff's discovery in the United States under the age of five are irrelevant to whether Plaintiff should be presumed an American citizen. Thus, it is not surprising that Defendants' briefing is imprecise – it is never explained whether "how" Plaintiff was found should include the time of day, whether Lumbard was driving or on foot, or whether Lumbard noticed Plaintiff in the street or in a home. Defendants seek unspecified information outside the

7

scope of the statute.

More importantly, a genuine issue of material fact exists as to whether Plaintiff was found in the United States under the age of five.  Ms. Williams testified that Lumbard never drove far from the couple's home to retrieve Plaintiff for the initial weekend visits.  And it is simply uncontroverted that Plaintiff was discovered in 1959, at the age of three.  Though Defendants consider Plaintiff's early school records evidence that he was born in Canada, the Court is unclear on how these records – even if accurate – have any bearing on where Plaintiff was found and his age at the time of discovery.  Indeed, there is no evidence in the record that Lumbard found Plaintiff in Canada – all the deposition testimony and documentary evidence suggests otherwise.  Thus, the Court concludes that Defendants have failed to show the absence of a genuine issue of material fact as to section 1401(f)'s requirement that the individual of unknown parentage be found in the United States under the age of five.

### C.    "Shown Not to Have Been Born in the United States"

Defendants next urge the Court to extend *Johnson*'s holding to require that Plaintiff bear a burden "to establish his claimed citizenship by a preponderance of the evidence." *See* Mot. at 15.  Specifically, Defendants argue that Plaintiff's school records, which state that Plaintiff was born in Canada, rebut any presumption that arises out of Plaintiff being found in the United States under the age of five.  Defendants rely upon the following language in section 1401(f): "until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States."  8 U.S.C. § 1401(f).  According to Defendants, the school records show, for the purposes of the statute, that Plaintiff was not born in the United States, thus shifting the burden of proof back to Plaintiff.  This argument fails as a matter of law.

The Court need not rule on Defendants' dubious claim that the publication of a school district's student record constitutes a "showing" under section 1401(f).  Even if the school record constituted a "showing" that Plaintiff was born in Canada, Plaintiff's baptismal certificate (indicating a place of birth in Chicago) rebuts that "showing."  And the absence of any birth record held by the government of Canada calls into question the information contained in the school record.  Moreover, the information in the school record was likely provided by

Lumbard and Williams, whose testimony Defendants have otherwise serially disregarded in their briefing. The Court declines to follow Defendants' lead and cherry-pick some portions of the record at the expense of others. While there are no doubt considerable factual uncertainties even with respect to the school records – *i.e.*, the source of the information in the school records, the creation of the school records, the preservation of the school records – Defendants have offered no reason why all of these factual uncertainties should be resolved in their favor, especially at the summary judgment stage, where the moving party bears the burden of proving the absence of a genuine issue of material fact.

Indeed, Defendants' briefing makes the argument against summary judgment when it highlights the existence of "***conflicting evidence*** regarding" the key facts in this case. As Defendants are well aware, summary judgment does not issue in the face of conflicting evidence; it is only warranted absent a genuine issue of material fact. And the Court finds a genuine issue of material fact as to whether it was shown, before Plaintiff attained 21 years of age, that Plaintiff was born outside the United States.

Finally, Defendants argue that Plaintiff bears the burden of rebutting or explaining the school records. In support of this novel theory, Defendants reference the general rule that an alien bears the burden of proving eligibility for citizenship and that any doubts should be resolved against the individual seeking citizenship." *See* Mot. at 14 (citing *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637, 87 S.Ct. 666 (1967); *United States v. Manzi*, 276 U.S. 463, 467, 48 S.Ct. 328 (1928); *Petition of Giz.*, 264 F. Supp. 252 (C.D. Cal. 1967)).

However, every one of the cases cited by Defendants involved "an alien who applies for naturalization." *See, e.g.*, *Berenyi*, 385 U.S. at 631; *see also Manzi*, 276 U.S. at 464 (citing and applying section 2165 of the Immigration and Naturalization Act, which provides for the circumstances in which "an ***alien*** may be admitted to become a citizen of the United States") (emphasis added); *Petition of Giz.*, 264 F. Supp. at 253 (summarizing case as involving "a final hearing . . . on a petition to ***naturalize***") (emphasis added).

Section 1401 does not provide for citizenship via naturalization. Rather, the statute provides that an individual shall be deemed to be national and citizen ***by birth*** in certain

9

circumstances.  In such circumstances, unlike naturalization, Plaintiff is not seeking to obtain a citizenship benefit he never had.  Rather, Plaintiff is seeking confirmation of a citizenship benefit he already (and always) had by virtue of his discovery in the United States under the age of 5.  It is instructive that the plain language of section 1401 contrasts other citizenship statutes in the sense that 1401 does not set out prerequisites to citizenship, but merely designates as citizens a group of individuals bearing certain characteristics.

In any event, Plaintiff has created at least a genuine issue of material fact as to whether he is a citizen under 1401(f) for the reasons outlined above.  Plaintiff has advanced testimonial and documentary evidence that he was found in the United States under the age of five and that his parents are unknown.  And Plaintiff has rebutted any claim that he was born in Canada by obtaining a statement from the Canadian government that no records of his birth exist.

### D.    Deference to Agency Interpretation of Section 1401(f)

Defendants argue that the Court should defer to agency's interpretation of section 1401(f).  As previously noted, the Court conducts a trial de novo and the agency's findings do not control.  *See Kennedy*, *supra*.

Defendants conflate a statute's interpretation with its application.  According to Defendants, *Chevron* deference requires that the Court credit the following determination by the agency: "The AAO determined this statute does not apply to Plaintiff because there is evidence he was not born in the United States that existed prior to plaintiff turning twenty-one years old, evidence which he is unable to refute."  *See* Mot. at 23.  These are factual findings, not statutory interpretations.  And the Court simply disagrees that USCIS' experience handling applications for citizenship brought under the foundling statute somehow requires that the Court simply adopt the agency's findings as its own.  Indeed, Defendants' argument would require that the Court expressly depart from the requirement that it conduct a trial de novo on these issues.

//

//

//

10

**IV.    Disposition**

For the foregoing reasons, the Motion is DENIED.


IT IS SO ORDERED.

DATED: May 3, 2010

_____
DAVID O. CARTER
United States District Judge

11